Belknap,
June 5, 1934.

### PHILIP BLANCHETTE *v.* FRANK SARGENT.

*Robert W. Upton* and *George P. Cofran* (*Mr. Cofran* orally), for the plaintiff.

*Demond, Woodworth, Sulloway & Rogers* (*Mr. Franklin Hollis* orally), for the defendant.

MARBLE, J.   It is conceded that the rights of the parties are governed by the Vermont statute (P. L., Vt., c. 211, s. 5113) which provides that "The owner or operator of a motor vehicle shall not be

liable in damages for injuries received by any occupant of the same occasioned by reason of the operation of such vehicle unless such owner or operator has received or contracted to receive pay for the carriage of such occupant, or unless such injuries are caused by the gross or wilful negligence of the operator."

The plaintiff's son, Edward Blanchette, who was agent for a building contractor in Concord, employed the defendant, a paper hanger, to paper the rooms of a house which the contractor was constructing at Montpelier, Vermont. He also engaged the plaintiff to do some of the painting in this house. He then asked the defendant, who intended to drive from Concord to Montpelier, if he would take the plaintiff with him.

He testified: "I asked him if he would care to go through Laconia and pick up my father, and he said he would, and I told him I would fix it up with him. ... He says, 'all right'."

The promise to "fix it up" was in effect a promise to pay. *Robinson* v. *Gilman*, 43 N. H. 485, 490. See also *Lawrence* v. *Farwell*, 86 N. H. 59, 61, 65. It could therefore be found that the defendant "contracted to receive pay for the carriage" of the plaintiff within the meaning of the statute.

"If the request is for performance as a favor, no offer to contract is made, and performance of the work or services will not create a contract; but if the request is made under such circumstances that a reasonable person would infer an intent to pay for them (and this is always a question of fact under all the circumstances of the case) the request amounts to an offer, and a contract is created by the performance of the work." 1 Williston, Contracts, s. 36.

The fact that in the present case there was no definite statement of the amount to be paid is immaterial. If a contract were found to exist, the fair value of the services rendered would be recoverable. *Bottomly* v. *Parmenter*, 85 N. H. 322, 326; 1 Williston, Contracts, s. 41.

The court erred in granting the defendant's motion as to the first count of the declaration.

The defendant called for the plaintiff at Laconia as requested. They left Laconia at one o'clock. Tire trouble caused a long delay, and it was dark when they reached Groton. Six miles west of Groton they met an automobile coming toward them from the west. When the defendant first saw this automobile it was 75 or 100 feet away. The defendant was then driving in the middle of the road at a speed of 25 or 30 miles an hour. The lights of his car were on, and he could

see plainly in front of the car a distance of 30 feet. He turned to the right to allow the approaching automobile to pass and in doing so ran off the traveled part of the road.

The highway consisted of a strip of hard-packed gravel eighteen feet wide with a three-foot shoulder of coarser gravel supported by rocks "banked into the side of the road" and "fairly well buried by the gravel." The top of a sharp ledge projected through the shoulder at a point less than two feet from the edge of the hard-packed surface. The rear tire of the defendant's car was punctured by this projecting rock. The car then ran a distance of thirty feet, striking a tree and throwing the plaintiff through the windshield. The distance from this tree "to the nearer edge of the improved surface" was only four feet.

The defendant testified that he "usually slowed down in passing another car at night" and that he did so on this occasion. The following is quoted from his testimony:

"Q. How did this accident occur, Mr. Sargent? What happened? A. Why, I met a car and went out to the side of the road to allow the car to pass, and just after passing the car, I felt the back end of the car jounce. When I tried to pull back into the road and before— almost instantly the car was thrown, the front of it, into a tree. . . .

"Q. And how far did you go after feeling the jounce? A. Not very far. I should judge that we struck just about that time. I started to say 'what in the world' and I never finished the sentence. Q. Did you feel more than one jounce before the accident? A. Just one jounce,—I should judge it was at the back of the car. Q. Did you notice the outcropping of a ledge there? A. Yes. When I came back. Q. And was that what caused the jounce, apparently? . . . A. My judgment is that that was it. . . .

"Q. Now, did you say the rear end of your car first slued? A. Why, it felt like that. It looked to me, looking ahead, as though the front end of the car was in the road, but the back end of the car, the wheels was in the gully. I tried to pull back into the road. . . .

"Q. And did you take your foot off the gas lever before the accident? A. I didn't have time to . . . Q. Is your eyesight good? A. Yes. Q. You can see all right at night? A. Why, yes. Q. Do you customarily drive at night? A. I do not. Q. Why not? A. Why, I presume on account of my age." (The defendant was sixty-five years old at the time of the accident.)

While the defendant's conduct would justify a finding of negligence, that conduct did not in our opinion indicate such "utter forgetfulness

of legal obligations" as to constitute "very great" or gross negligence within the Vermont rule. *Shaw* v. *Moore*, 104 Vt. 529, 531.

The situation is quite different from that described in *Hunter* v. *Preston*, 105 Vt. 327, 337, where the evidence against the defendant Midgley is said to have "made a case for the jury on the question of gross negligence." The evidence in that case tended to prove that Midgley was driving thirty-five or forty miles an hour at night on Lake Avenue in the city of Burlington, Vermont; that the pavement was icy and slippery; that Midgley "had observed the difficulty experienced by others because of that condition"; that he was blinded by the lights of a parked car, and that he did not decrease his speed until it was too late to avoid hitting another car which was parked on the opposite side of the street.

In the case of *Franzoni* v. *Ravenna*, 105 Vt. 64, the Vermont court reversed a judgment for the plaintiff based on a finding of gross negligence. The facts are thus stated in the opinion: "The road was deeply rutted, and the walls of the ruts were frozen. Ravenna was driving his car, the plaintiff sat on the front seat with him, and three other passengers were riding on the back seat. Ravenna's car was going northerly and there were two sets of ruts in the road. Instead of his taking the ruts on the right-hand side of the road, he was driving with his right wheels in one set of ruts and his left wheels in the other set. When he saw the truck approaching from the north, Ravenna seasonably attempted to turn his car to the right, but he could not get the wheels out of the ruts. He persisted in this attempt and finally brought his front wheels out, but was unable to get his rear wheels out. So he turned the front wheels back into the ruts. Again he attempted to force his car out of the ruts to the right and continued in this attempt until it was too late to stop his car, and it crashed into the truck, which had in the meantime been brought to a stop."

The opinion concludes: "That he [Ravenna] was careless, either in getting into the two ruts he appears to have chosen, or in his persistent attempts to force his car out of them, or both, may be admitted. That he should have stopped his car long enough before he hit the truck to have avoided a collision is quite apparent. But he was all the time trying to avoid an accident. He was doing his best to accomplish that result. He made a mistake, to be sure, perhaps a series of them, but he was not so far wrong as to evoke a protest from any of his passengers, and there is nothing in the record to indicate an indifference to his duty to his guests or an utter forgetfulness of their safety."

Similarly, in the present case, it may be conceded that the defendant made a mistake in turning so far to the right and that he should have attempted to stop instead of trying to pull back into the road, and yet there is nothing in the record that indicates indifference to legal duty or "utter forgetfulness" of the plaintiff's safety, "which is the test of gross negligence." *L'Ecuyer* v. *Farnsworth*, 106 Vt. 180.

Obviously, the defendant could not be found guilty of wilful negligence. *Hunter* v. *Preston*, 105 Vt. 327, 338.

The motion for a directed verdict on the second count should have been granted.

The suggestion that the plaintiff failed to sustain the burden of proof on the issue of contributory negligence (*Precourt* v. *Driscoll*, 85 N. H. 280, 282-288) is untenable. *Higgins* v. *Metzger*, 101 Vt. 285, 290-293.

*Plaintiff's exception sustained as to first count.*

*Defendant's exception sustained as to second count.*

WOODBURY, J., did not sit: the others concurred.