Plaintiff Sherry Klaber was injured while a passenger in the automobile driven by defendant Renee Elliott. Klaber sued Elliott for negligence and wantonness in the operation of her car, and the trial court granted summary judgment in favor of Elliott. Klaber appeals from that judgment.
On Sunday afternoon, May 27, 1984, Elliott, Klaber, and three other girls, Stacey Johnson, Marsha Williams, and Tracy Defoor, left Elliott's house in Elliott's car and headed to the house of some friends, the Holdbrooks, just outside Haleyville on Bear Creek Lake. After staying about 15 minutes, the girls left around 4 p.m., while it was still daylight, in order for one of them to go to church at 6 p.m. that night. Klaber was in the front passenger's seat, Elliott was driving, and the other three girls were seated in back. It had been raining *Page 577 
earlier that day and was still drizzling when the girls headed back to Haleyville on Pepper's Mill Road. This road curves to the right just before it intersects with county road 71, or Dime Road. As Elliott approached the curve on Pepper's Mill Road, with which she says she was unfamiliar, she applied her brakes, at which time the car slid off the right side of the road into an adjacent ditch and continued up out of the ditch onto Dime Road, where it finally stopped in the far lane. As a result of the accident, Klaber received compression fractures to a vertebra, which necessitated a one and one-half week stay in a hospital.
The trial court found that wanton conduct, not negligence, was the standard of liability, and granted summary judgment. The two issues on appeal are whether Klaber was a guest or a passenger within the terms of Alabama's guest statute, Ala. Code 1975, § 32-1-2,[1] and whether the trial court erred in not submitting the issue of wantonness to the jury.
 I
Klaber, who was not licensed to drive at the time, was a good friend of Elliott's, who was licensed, and rode with her frequently, pitching in for gasoline on occasion. Regarding that practice, Klaber testified in her deposition:
"Q. Did you customarily buy gas?
"A. Yes.
"Q. Did you have any sort of agreement?
 "A. When it was getting low we would pitch in and —
 "Q. Was it your custom and practice at that time to help buy gas each time Renee bought it?
"A. Just about.
"Q. Had you bought any gas that day?
"A. No."
Klaber contends that the fact that she occasionally helped Elliott with gas made her a paying "passenger" and not a "guest" and took her from the purview of § 32-1-2, which covers only those "being transported without payment therefor."
The cases construing § 32-1-2 have distinguished a "guest" from a paying "passenger" based upon the context within which the transportation was rendered. More specifically, they turn upon whether the ride was purely social or had a business-related purpose, thus conferring some benefit, whether immediate or anticipated, upon the driver. See Blair v. Greene,247 Ala. 104, 22 So.2d 834 (1945); Sullivan v. Davis, 263 Ala. 685, 83 So.2d 434 (1955); Klein v. Harris, 268 Ala. 540,108 So.2d 425 (1958); Wagnon v. Patterson, 260 Ala. 297,70 So.2d 244 (1954).
In explaining this dichotomy, we have quoted with approval from 60 C.J.S. Motor Vehicles, § 399(5), p. 1015 (1969), that "the sharing of the cost of operating the car on a trip, when the trip is undertaken for pleasure or social purposes and the invitation is not motivated by, or conditioned on, such contribution, is nothing more than the exchange of social amenities and does not transform into a paying passenger one who without the exchange would be a guest." Wagnon,260 Ala. at 304, 70 So.2d at 250. Regarding the context of each case, "[i]t is sometimes necessary to enter into a detailed examination of the present and former relations between driver and passenger; implied and expressed arrangements made between them as to the conduct of the particular trip; the purpose of the mission; the benefits accruing to the driver and passenger from the expedition; and any other factors that bring into proper focus the true status of the parties at the time of the accident which give rise to the legal action." Sullivan,263 Ala. at 688, 83 So.2d at 436. *Page 578 
Examining the context of the ride in this case, we find it apparent that the venture was purely social. The girls had been swimming at Elliott's house earlier that afternoon, and they drove to the Holdbrooks' house, where more of their friends were swimming. Neither Klaber nor Elliott disputes their intended destination that day or the purpose behind it.
 " 'Where a dispute exists as to what were the respective purposes or conditions for or upon which the transportation was undertaken, relative to the nature and existence, if any, of the benefits conferred upon the respective parties, it is ordinarily a question of fact whether or not the invitee was a guest within the meaning of the statutes.
 " 'Where, however, reasonable minds can reach but one conclusion from the uncontroverted facts, the question becomes one of law for the court.' "
Harrison v. McCleary, 281 Ala. 87, 91, 199 So.2d 165, 168
(1967) (citation omitted). See also Roe v. Lewis, 416 So.2d 750
(Ala. 1982). We consider Klaber's occasional helping with gas a mere social courtesy on behalf of a friend. Whatever benefit was conferred upon Elliott was "incidental to hospitality, good will or the like," 199 So.2d at 167, and was insufficient to remove Klaber from § 32-1-2.
Therefore, we hold as a matter of law, based upon the factual context of this case, that Klaber was indeed a guest and not a paying passenger in Elliott's car.
 II
This determination restricts Klaber's cause of action to one for wanton misconduct and not negligence. English v. Jacobs,263 Ala. 376, 82 So.2d 542 (1955); Costarides v. Miller,374 So.2d 1335 (Ala. 1979); Maffett v. Roberts, 388 So.2d 972 (Ala. 1980).
 " 'Before a party can be said to be guilty of wanton conduct it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced injury.' "
Whitmore v. Burge, 512 So.2d 1320, 1327 (Ala. 1987).
In reviewing the trial court's order granting summary judgment on this issue, we must look to the circumstances on the day of the accident, including weather conditions, the type of road, the speed of the car, etc., to determine whether there exists a genuine issue of material fact as to wanton misconduct.
Both Klaber and Elliott testified at their depositions that it had rained hard earlier that day and was still drizzling when they left their friend's house. When asked about Elliott's speed, Klaber responded, "I do remember thinking it was going too fast to make the curve right as it happened." Elliott, on the other hand, testified that she was driving only 25 mph. Her account of the conditions of the road and weather just prior to the accident is:
 "It had been raining hard that day and the roads were real slippery, and I had never been on that road before. And when you turn in you turn on the curve. It doesn't look like a curve. When I was coming out it was straight and the curve pops up. I was driving slow and I was driving carefully but when I got up on the curve I didn't know it that well and I slid off of the road."
She attributes her losing control of the car to the fact that she "did not see the curve until [she] got right up on it" because she was unfamiliar with that particular road.
Elliott argues that her unfamiliarity with the road should be a consideration, as it was in Marshall v. Marshall, 284 Ala. 512, 226 So.2d 298 (1969), in deciding whether she acted recklessly with a knowledge of the possible consequences. In that case, the trial court granted defendant's motion to exclude the plaintiff's evidence where the defendant driver was unfamiliar with an intersection in Mobile at which a stop sign had been removed for utility work. There was no evidence of bad weather or evidence that the driver was speeding. In affirming, we noted that the driver lacked the knowledge that injury would likely result, one of the necessary elements of wanton misconduct. Although Elliott says that *Page 579 
she was unfamiliar with Pepper's Mill Road, one of the other girls in the car testified that they had taken that same road on their way to the Holdbrooks' house earlier that afternoon. At the very least, this sharp curve should have put her on notice, due to the rain, to be especially cautious on the return trip. Unlike the Marshall case, this could supply the necessary knowledge toward proving wanton misconduct.
We recognized in Hamer v. Nelson, 516 So.2d 1381 (Ala. 1987), that "although driving at an excessive speed, in and of itself, does not constitute wanton conduct, speed coupled with other circumstances can indeed rise to the level of wantonness."516 So.2d at 1386. It was the "other circumstances" that warranted reversal of the judgment based on the directed verdict in favor of the defendant in Hamer, and the "other circumstances" in this case compel us to reverse here.
Jerry Feltman, a law enforcement officer investigating motor vehicle accidents for 26 years, calculated that the car skidded 53.5 feet prior to the ditch and 115 feet after crossing the ditch. He also concluded that the extreme minimum possible speed of the car was 45.15. Klaber testified that there was a sign warning of the curve on Pepper's Mill Road prior to the bend in the road. She also agreed that she and the rest of the girls were "talking and carrying on" and that "Renee just went into the curve too fast and couldn't make it."
Knowledge need not be proven directly but may be inferred from the facts of the case. Burns v. Moore, 494 So.2d 4 (Ala. 1986); Shirley v. Shirley, 261 Ala. 100, 73 So.2d 77 (1954). A jury could reasonably infer, based upon the foregoing conditions, that Elliott knew of the possible danger and acted recklessly with regard to the consequences. Because there is a scintilla of evidence of wanton misconduct, considering all of the facts and circumstances, we reverse the summary judgment and remand the case for trial on the issue of wanton misconduct.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur.
[1] "§ 32-1-2. Liability for injury or death of guest.
 "The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle. (Acts 1935, No. 442, p. 918; Code 1940, T. 36 § 95.)"