813 So.2d 905 (2001)
Beverly THEDFORD and Tommy Andre Thedford
v.
Calvin L. PAYNE, Jr.
2991381.
Court of Civil Appeals of Alabama.
May 18, 2001.
Certiorari Denied August 31, 2001.
*906 Mark D. Hess and Joseph L. Cowan II of London & Yancey, L.L.C., Birmingham, for appellants.
J. Michael Campbell of Campbell & Springer, Birmingham, for appellee.
Alabama Supreme Court 1001574.
THOMPSON, Judge.
Julia Payne, individually and as parent and next friend of Calvin L. Payne, Jr. ("Calvin"), sued Tommy Andre Thedford ("Tommy") and Beverly Thedford, individually and as parent and next friend of Tommy. In her complaint, Julia Payne alleged counts of negligence, negligent entrustment, and wantonness; she sought damages for an injury Calvin suffered as a result of an automobile accident caused, she alleged, by Tommy's negligence. The Thedfords answered and denied liability. In their answer, the Thedfords argued that Payne was not entitled to recover damages because Calvin was a guest in Tommy's automobile at the time of the accident, and, therefore, the Alabama Guest Statute, § 32-1-2, Ala.Code 1975, barred recovery for Calvin's injury.
The Thedfords moved for a summary judgment; the trial court denied that motion. *907 Before the trial, Calvin reached the age of majority; therefore, he filed an amended complaint to allege, in his own name, the claims contained in Julia Payne's complaint. The trial court dismissed Julia Payne as a plaintiff in the action. The case proceeded to a jury trial.
At trial, the Thedfords moved for judgments as a matter of law at both the close of Calvin's presentation of evidence and at the close of all of the evidence. The trial court denied the Thedfords' motions. The jury returned a verdict in favor of Calvin, awarding him $18,250 in damages. After the jury returned its verdict, the Thedfords filed a postjudgment motion seeking a judgment as a matter of law or, in the alternative, a new trial; the Thedfords filed that "postjudgment" motion before the trial court entered a judgment on the jury verdict. The trial court entered a judgment on the jury's verdict and then denied the Thedfords'"postjudgment" motion. The Thedfords appealed.
Calvin and Tommy have been best friends since their childhood. At the time of the accident that is the basis of this action, Calvin and Tommy were both 17 years old, both attended the same high school, and both played on their high school's football team. Tommy and Calvin each had an automobile and, at the time of the accident, each had been licensed to drive for approximately one year. Calvin and Tommy testified that they often rode together to school or to football practice, especially if one of their automobiles was inoperable.
In July 1997, Calvin's automobile was inoperable; he testified that during that time, he obtained rides from Tommy. After football practice on July 28, 1997, Calvin got into the passenger side of Tommy's automobile, and Tommy drove out of the school's parking lot. As he drove his automobile through the exit of the parking lot and onto a road leading to a nearby intersection, Tommy looked through the side window of his automobile. Tommy testified that when he again looked in front of the automobile, he realized an automobile in front of him was stopped. Tommy was unable to avoid the collision, and his automobile struck the rear of the stopped automobile. When the collision occurred, the air bags in Tommy's automobile deployed. The passenger-side air bag struck Calvin in the face and injured his right eye. Calvin testified that, as a result of the injury to his eye, he has a "blind spot" in the peripheral vision in his right eye.
At trial, Calvin testified that in July 1997, he had an arrangement with Tommy whereby he paid Tommy $2 or $3 to drive him to or from football practice. Tommy's lawyer cross-examined Calvin, pointing out that Calvin had testified in his deposition that he occasionally contributed money for gasoline if he rode with Tommy and that if either he or Tommy did not have transportation, the other would provide a ride out of friendship. It is undisputed that Calvin did not yet pay Tommy for the ride on July 28, 1997. However, Calvin testified at trial that he usually paid Tommy later in the ride, and the accident occurred at the beginning of their trip as the two young men were leaving the high school's parking lot. At trial, Tommy testified that he gave Calvin rides out of friendship and that Calvin occasionally contributed money to assist with the cost of gasoline.
Initially, we note that a jury verdict is presumed to be correct and will not be disturbed unless it is plainly erroneous or manifestly unjust. Crown Life Ins. Co. v. Smith, 657 So.2d 821 (Ala.1994). The presumption that a jury verdict is correct is further strengthened by the trial court's denial of a motion for a new trial. Cobb v. MacMillan Bloedel, Inc., 604 So.2d 344 (Ala.1992). When reviewing a jury verdict, *908 an appellate court must consider the evidence in a light most favorable to the prevailing party; we must presume that the jury drew from the facts any reasonable inferences necessary to support its verdict. Crown Life Ins. Co. v. Smith, supra; Martino v. Bruno's Inc., 681 So.2d 602 (Ala.Civ.App.1996).
The Thedfords first argue that Calvin was a guest in Tommy's automobile and that, as a matter of law, Alabama's Guest Statute bars Calvin's recovery under that claim. In ruling on a motion for a judgment as a matter of law, the trial court must determine whether the evidence presented was sufficient to create a factual question for the jury to resolve. American Nat'l Fire Ins. Co. v. Hughes, 624 So.2d 1362 (Ala.1993). In order to create a jury question, the nonmoving party must present "substantial evidence," or "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
"The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle."
§ 32-1-2, Ala.Code 1975.
The purpose of Alabama's Guest Statute, § 32-1-2, Ala.Code 1975, is "to prevent generous drivers, who offer rides to guests, from being sued in what often are close cases of negligence." Roe v. Lewis, 416 So.2d 750, 753 (Ala.1982). However, where the guest is a paying passenger, the Guest Statute does not apply to prevent recovery on a negligence claim, because that section applies only when the guest is "being transported without payment therefor." § 32-1-2, Ala.Code 1975. See also Klaber v. Elliott, 533 So.2d 576 (Ala.1988). Our supreme court has distinguished between "guests" and "passengers" in the context of Alabama's Guest Statute, as follows:
"The general rule is that if the transportation of a rider confers a benefit only on the person to whom the ride is given, and no benefits other than such as are incidental to hospitality, goodwill or the like on the person furnishing the transportation, the rider is a guest. However if his carriage tends to promote the mutual interest of both himself and the driver for their common benefit, thus creating a joint business relationship between the motorist and his rider, or if the rider accompanies the driver at the instance of the driver for the purpose of having the rider render a benefit of service to the driver on a trip that is primarily for the attainment of some objective of the driver, the rider is a `passenger for hire' and not a `guest.'"
Sellers v. Sexton, 576 So.2d 172, 174 (Ala. 1991) (citations omitted).
In Sellers v. Sexton, supra, a college student was killed in a one-vehicle accident involving an automobile driven by the decedent's friend, Sexton, who was also a college student. The evidence indicated that the decedent rode home from college with Sexton three out of every four weekends, and that the decedent's mother paid Sexton $10 per trip to help cover the transportation expenses. In reversing a summary judgment entered in favor of Sexton, our supreme court held that there was a factual question as to whether the decedent was a guest or was a passenger *909 because of the "arrangement for transportation that contemplated regular trips of considerable magnitude." 576 So.2d at 174.
In Carter v. Reed, 638 So.2d 833 (Ala. 1994), Carter, who was unable to drive, paid Reed $5 to drive her on weekly trips to run errands. On one of those trips, the automobile, driven by Reed, was involved in a one-vehicle accident. Carter was injured in that accident. Our supreme court reversed the trial court's summary judgment in favor of Reed because the evidence was disputed regarding whether Reed's offer of transportation to Carter was conditioned on Carter's paying Reed. Carter v. Reed, 638 So.2d at 833-34, citing Sellers v. Sexton, supra.
In Klaber v. Elliott, supra, Klaber, who was riding in an automobile driven by Elliott, was injured in a one-vehicle accident. In that case, two friends, Klaber and Elliott, were traveling with other friends from one girl's home to that of another in order to go swimming. Klaber, who was not licensed to drive, testified that she almost always contributed to pay for gasoline when she rode with Elliott. Our supreme court affirmed the summary judgment entered in favor of Elliott, holding that the ride Elliott provided Klaber was purely social in nature. The court characterized Klaber's occasional contributions to assist with the costs of gasoline to be a "mere social courtesy," and it stated that "[w]hatever benefit was conferred upon Elliott was `incidental to hospitality, good will or the like,' ... and was insufficient to remove Klaber from § 32-1-2." Klaber v. Elliott, 533 So.2d at 578.
In so holding, our supreme court quoted with approval the following:
"`[T]he sharing of the cost of operating the car on a trip, when the trip is undertaken for pleasure or social purposes and the invitation is not motivated by, or conditioned on, such contribution, is nothing more than the exchange of social amenities and does not transform into a paying passenger one who without the exchange would be a guest.'"
Klaber v. Elliott, 533 So.2d at 577 (quoting Wagnon v. Patterson, 260 Ala. 297, 304, 70 So.2d 244, 250 (1954) and 60 C.J.S. Motor Vehicles, § 399(5), p. 1015 (1969)).
Although Calvin testified that he paid Tommy to take him to or from football practice, he testified that the ride was not conditioned on his payment. Both Calvin and Tommy testified that they often rode together out of friendship if either's automobile was inoperable. There was no evidence that Tommy conditioned his offer of transportation to Calvin on Calvin's paying him for the transportation. See Sellers v. Sexton, supra; Klaber v. Elliott, supra. We agree with the Thedfords that this case is factually similar to those of Klaber v. Elliott and that Calvin's making financial contributions for gasoline was "a mere social courtesy." 533 So.2d at 578. Thus, we conclude that Alabama's Guest Statute applied to preclude Calvin's recovery under his claim alleging negligence. The trial court erred in denying the Thedford's motion for a judgment as a matter of law on Calvin's negligence claim and in submitting that claim to the jury. We must reverse as to this issue.
The Thedfords next argue that Calvin failed to present substantial evidence on the issue of wantonness. A finding of wantonness on the part of the defendant driver also takes a guest outside the provisions of Alabama's Guest Statute and allows the guest to recover damages for injuries suffered as a result of the driver's wanton conduct. § 32-1-2, Ala.Code 1975; Klaber v. Elliott, supra. Wantonness is the "doing of some act or omission of some duty under knowledge of existing conditions, *910 while conscious that from the doing of such act or omission of such duty injury will likely or probably result." Sellers v. Sexton, 576 So.2d at 175.
In Sellers v. Sexton, supra, our supreme court reversed the summary judgment entered in favor of Sexton, the driver, on the claim of wantonness filed by the plaintiff, the administrator of the estate of Sexton's passenger. In that case, weather advisories had been issued because of the possibility of freezing precipitation. Sexton had driven over one bridge that had been covered with loose stones in preparation for the bad weather; she was driving at or near the maximum posted speed. She failed to slow down upon approaching a second bridge, also covered with loose stone, where she knew a wide curve would obstruct her view of oncoming traffic. While driving too fast on the second bridge, Sexton lost control of the automobile; her passenger was killed in the ensuing accident. The supreme court concluded that the plaintiff had presented substantial evidence to support his claim that Sexton had acted wantonly.
In Klaber v. Elliott, supra, our supreme court reversed a summary judgment on Klaber's claim of wantonness. In that case, the automobile, driven by Elliott and in which Klaber was a passenger, left the road and landed in a ditch near a curve. The evidence indicated that earlier in the day Elliott had driven on the road and through the curve on which the accident later occurred; that it was drizzling rain at the time of the accident and the road was wet; and that Elliott was driving too fast. The court concluded that a jury question was presented because a jury "could reasonably infer" that Elliott knew of a possibility of danger on the road which she was traveling and that she had driven with reckless disregard of that danger. 533 So.2d at 579.
In Green v. Leatherwood, 727 So.2d 92 (Ala.Civ.App.1998), the driver, Green, was traveling in the right lane and had activated the automobile's turn signal to indicate he was planning to make a right turn. Green saw a video store on the left side of the road, decided he wanted to stop at the store, and, without pausing or indicating his intentions, drove the automobile from the right lane into the left lane of traffic. The automobile Green was driving struck an automobile that was traveling in the left lane. This court affirmed the trial court's determination that Green's conduct amounted to wantonness, holding that the conflicting evidence would support a finding that Green "consciously and intentionally changed lanes in such a manner as to charge him with knowledge that his action would probably result in injury to his passengers." Green v. Leatherwood, 727 So.2d at 94.
In this case, very little evidence regarding the circumstances of the accident was presented before the close of Calvin's presentation of evidence. Calvin testified that immediately before the accident, he was turned around in his seat and was reaching into the back seat to organize his athletic shoes. Calvin stated that when he turned back around to face the front of the automobile, the impact occurred and the automobile's air bag deployed. Calvin testified that Tommy was not driving erratically on the day of the accident and that he was not afraid to ride with Tommy. The only other evidence offered by Calvin regarding the manner in which the accident occurred was a portion of Tommy's deposition. In his deposition, Tommy testified that the automobile in front of him was stopped when he first saw it. He described the circumstances of the collision as follows:
"Well, we [were] just turning the corner onto that street, and I think I was looking, not in front of me, but like to *911 theout the side window. Then I guess I just was not paying attention, and I looked up and hit [the other automobile]. I looked up before I hit [it], but as soon as I looked up, I hit him."
At the close of Calvin's presentation of evidence, the Thedfords moved for a judgment as a matter of law on Calvin's wantonness claim. The trial court denied that motion. During the Thedford's presentation of evidence, there was no further mention of the circumstances surrounding the July 28, 1997, accident. At the close of the evidence, the Thedfords renewed their motion for a judgment as a matter of law.
Calvin argues that he showed that Tommy was "staring" out the side window of the automobile immediately before the accident. The record does not support that contention. The evidence in the record contains no indication that Tommy drove with reckless disregard or that he consciously or intentionally drove in a manner that would charge him with knowledge that injury would likely result. At most, the record supports an inference that Tommy's conduct was negligent. We conclude that Calvin failed to present in support of his claim alleging wantonness the substantial evidence that was necessary in order for that claim to be submitted to the jury.
The Thedfords next argue that Calvin failed to present substantial evidence to support his negligent-entrustment claim against Beverly Thedford. Although this issue is not addressed by the parties, we note that in Penton v. Favors, 262 Ala. 262, 78 So.2d 278 (1955), our supreme court determined that Alabama's Guest Statute does not bar a negligent-entrustment claim against the owner of an automobile. The Guest Statute applies "only to such person as may be responsible for the manner of [the automobile's] operation;... it does not apply to the owner unless he is operating the [automobile] in person or it is under his immediate control or is operated by his servant or agent duly authorized by him." Penton v. Favors, 262 Ala. at 269, 78 So.2d at 284.
"`"Negligent Entrustment is defined in Restatement (Second) of Torts § 390, as follows:
"`"`One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.'"'"
Stanford v. Wal-Mart Stores, Inc., 600 So.2d 234, 236-37 (Ala.1992) (citations omitted).
In order to have his claim alleging negligent entrustment submitted to the jury, Calvin was required to present substantial evidence indicating that Beverly Thedford entrusted to Tommy the automobile he drove on the day of the accident; that Tommy was incompetent to operate the automobile; that Beverly Thedford knew of Tommy's incompetence; and that Beverly Thedford's entrusting the automobile to Tommy proximately caused Calvin's injury. Pryor v. Brown & Root USA, Inc., 674 So.2d 45, 51 (Ala.1995). Our supreme court has held that the "`doctrine of negligent entrustment is founded on the primary negligence of the entrustor in supplying a motor vehicle to an incompetent driver, with manifestations of the incompetence of the driver as a basic requirement of a negligent entrustment action.'" Id., quoting Mason v. New, 475 So.2d 854, 856 (Ala.1985) (other citations omitted).
*912 The parties agree that only one element of negligent entrustment was at issue in this casethey disagree as to whether there was substantial evidence that Tommy was "incompetent, inexperienced, or reckless." See Wilbanks v. Brazil, 425 So.2d 1123, 1125 (Ala.1983).
In Pryor v. Brown & Root USA, Inc., supra, our supreme court affirmed a summary judgment entered in favor of the defendant employer on Pryor's claim of negligent entrustment of an automobile to Jeff Dealy, one of Brown & Root's employees. Dealy's driving record indicated that he had received two speeding tickets and had been charged with driving under the influence in Texas during the 10-year period before the accident that was the basis of Pryor's action. The court concluded that the evidence regarding Dealy's driving record was not sufficient to support a claim of negligent entrustment.
Calvin presented evidence indicating that Tommy had been driving for one year before the accident occurred and that, three months before the accident at issue in this case, Tommy had been involved in a similar accident. At trial, Calvin emphasized Tommy's prior, similar accident and his "youth [and] inexperience." Stanford v. Wal-Mart Stores, Inc., 600 So.2d at 236. However, Calvin's theory would impose liability for negligent entrustment on the parents of any young driver involved in an accident, based solely on the driver's youth. This court is unwilling to impose such liability. Tommy had been involved in only one accident before the accident at issue in this case; that accident involved only damage to property. We cannot say that, as a matter of law, Tommy's driving record was such as to indicate an "unreasonable risk of physical harm to himself and others." Stanford v. Wal-Mart Stores, Inc., supra. Therefore, we conclude that the trial court erred in denying Beverly Thedford's motion for a judgment as a matter of law on Calvin's negligententrustment claim.
We conclude that the trial court erred in submitting Calvin's claims to the jury. Therefore, we pretermit discussion of the Thedfords' argument that Calvin's attorney improperly referred to their insurance provider during his closing argument.
REVERSED AND REMANDED.
CRAWLEY, PITTMAN, and MURDOCK, JJ., concur.
YATES, P.J., concurs in part and dissents in part.
YATES, Presiding Judge, concurring in part and dissenting in part.
I agree with the majority that the trial court erred in submitting the wantonness and negligent-entrustment claims to the jury. However, I believe there was sufficient evidence to create a fact question as to whether Calvin was a "passenger" or was a "guest" in Tommy's car. Therefore, I believe the trial court properly submitted the negligence claim to the jury.
I find Sellers v. Sexton, 576 So.2d 172 (Ala.1991), persuasive. In Sellers, the plaintiff filed a wrongful-death action based on the death of his daughter. The daughter and the defendant/driver were enrolled as first-year students in college, and it was their custom to ride together between their college and their homes at least three out of four weekends. The trial court entered a summary judgment for the defendant/driver on the grounds that the Guest Statute barred the negligence claim. The supreme court reversed, holding:
"The general rule is that the sharing of the cost of operating a car on a trip, when the trip is undertaken for pleasure or social purposes and the invitation is *913 not motivated by, or conditioned on, such sharing, is nothing more than the exchange of social amenities and does not transform into a passenger for hire one who, without the exchange, would be a guest. However, where the offer of transportation is conditioned on the passenger's contribution toward the expenses, or where it appears that the arrangement for transportation bears one or more of the indicia of a business arrangement, especially where the arrangement is specifically for transportation, or comprehends a trip of considerable magnitude, or contemplates the repetition of more or less regular rides, the person paying for gasoline and oil consumed or contributing toward other automobile expenses is held to be a passenger for hire and not a guest. This is true even though the ultimate purpose of the arrangement may be for pleasure. Wagnon v. Patterson, 260 Ala. 297, 70 So.2d 244 (1954).
"Based on the rule of law stated in these cases, we find that there is a question of fact that should be determined by the jury. These two students were good friends who were often together in a social manner; however, they also had an arrangement for transportation that contemplated regular trips of considerable magnitude. A jury, therefore, could consider the relations between the driver and the passenger, such as: implied and expressed arrangements made between them as to the conduct of the particular trip, the purpose of the trip, the benefits accruing to the driver and to the passenger from the trip, and any other factors that bring into proper focus the true status of the driver and the passenger at the time of the accident. Roe v. Lewis, 416 So.2d 750 (Ala.1982)."
Sellers, 576 So.2d at 174-75.
In the present case, Calvin and Tommy were friends who were often together in a social manner, but they also had an arrangement for transportation. One would ride with the other when his automobile was not operational. In July 1997, Calvin's car was not working. He and Tommy established a financial arrangement whereby Tommy would drive him to and from school and weight training in exchange for $2 or $3 a trip. Therefore, I disagree with the majority's holding that Alabama's Guest Statute barred Calvin's recovery under his negligence claim.