Hart, J.
 

 The question here presented is whether, applying the provisions of Section 6308-6, General Code, popularly known as the guest statute, the plaintiff was a guest of the defendant, transported without payment therefor; or a passenger of the defendant, paying for such transportation. Unless, under the statute, the plaintiff stood in the latter category, she was not entitled to recover. The text of the statute in question, Section 6308-6, General Code, is as follows:
 

 “The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being
 
 transported without payment therefor
 
 in or upon said motor vehicle, resulting from the the operation thereof, unless such injuries or death are caused by the wilful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle.” (Italics ours.)
 

 In 2 Restatement of Torts, 1273, Section 490, the designation of “passenger” as one carried for hire or reward, as distinguished from “guest” as one carried gratuitously, that is, without any financial return except such slight benefit as is customary as part of the ordinary courtesy of the road, has been adopted. For convenience, these terms will be adopted in this opinion to distinguish a person who has paid for bis transportation within the meaning of the statute from one who has not made such payment.
 

 The Ohio Guest. Act and similar acts in other states were undoubtedly enacted to carry out a policy of social equity to the effect that the owner or operator of' an automobile should not be made liable to a guest riding therein to whom the owner or operator is doing a favor or is extending a courtesy, except for wilful
 
 *54
 
 or wanton misconduct on his part, and that a guest should assume the risk of ordinary negligence or acts which are less culpable than wilful or wanton misconduct. That being the . spirit of the enactment, the motorist should be accorded the status which incurs the lesser liability unless his status is clearly and definitely changed by express consent or by facts constituting acquiescence on his part to a status which entails the greater liability.
 

 Since the liability of the motorist host to a person riding with him depends on the status of the latter, he, the latter, has the burden to establish such relation-' ship as entitles him to recover for any injury to himself growing out of the operation of the motor vehicle by the motorist. In other words, if the person being transported is a “guest,” he must show wilful or wanton misconduct on the part of his host motorist ; or, if he is a “ passenger ’ ’ and seeks to recover for the mere negligence of the motorist, he must show that he has made payment for his transportation.
 

 In the instant case, no contention was made and no evidence was adduced to support a claim that the defendant was guilty of wilful or wanton misconduct in the operation of his car. Conceding, for the sake of argument, that he was guilty of mere negligence, the sole question to be determined is whether the plaintiff was a “passenger.” This depends on whether payment was made for the transportation of the plaintiff by the defendant.
 

 What is meant by the words of the statute, “payment therefor,” as referring to transportation and as applied to the facts in this case? In the case of
 
 Duncan
 
 v.
 
 Hutchinson,
 
 139 Ohio St., 185, 188, 39 N. E. (2d), 140, we said:
 

 “Keeping in mind the purpose of the statute, it would seem that any expense money paid by a person
 
 *55
 
 for a ride in an automobile which is not substantially commensurate with the cost of such transportation will not take him out of the guest status fixed by the statute, unless payment for transportation as such was actually agreed upon. The justice of this rule is based on the fact that it would be unfair to hold the motorist to liability for injuries to his guest due to the hazards of transportation, unless the motorist is, in turn, compensated for such transportation in a manner substantially commensurate with the cost and the hazards of the undertaking. ’ ’
 

 See
 
 Chooljian
 
 v.
 
 Nahigian,
 
 273 Mass., 396, 173 N. E., 511;
 
 Gage
 
 v.
 
 Chapin Motors Inc.,
 
 115 Conn., 546, 162 A., 17;
 
 Blanchette
 
 v.
 
 Sargant,
 
 87 N. H., 15, 173 A., 383;
 
 Luebke v. Hawthorne,
 
 183 Ore., -, 192 P. (2d), 990.
 

 Some courts bold that to establish the status of “passenger” and “host,” the payment for transportation must flow from a contract relationship, an obligation to furnish transportation on the one hand and an obligation to pay for transportation on the other. The: benefit which must be present to remove the rider from the category of “guest” imports some contractual relation between the parties to which such benefit is referable. 60 Corpus Juris Secundum, 983, Section 399 (1) c;
 
 Brown
 
 v.
 
 Branch,
 
 175 Va., 382, 9 S. E. (2d), 285;
 
 Gale
 
 v.
 
 Wilber,
 
 163 Va., 211, 175 S. E., 739. Under such rule the test whether a “passenger” status existed at .the time of an accident, resulting in injury to the passenger, is whether the motorist host could recover in an action at law for the reasonable or agreed value of the transportation furnished.
 
 Smith
 
 v.
 
 Laflar,
 
 137 Ore., 230, 2 P. (2d), 18;
 
 Hale
 
 v.
 
 Hale,
 
 219 N. C., 191, 13 S. E. (2d), 221;
 
 Bushouse
 
 v.
 
 Brom,
 
 297 Mich., 616, 298 N. W., 303;
 
 Coerver
 
 v.
 
 Haab,
 
 23 Wash. (2d), 481, 161 P. (2d), 194, 161 A. L. R., 909.
 

 
 *56
 
 Other courts take the position that the test of the status of “passenger” and “host” is whether some substantial benefit is conferred upon the motorist as a consequence of the transportation. These courts hold that if there is such substantial benefit, the person being transported is not a guest and it is not necessary to establish a legal contract obligation in order to remove the person transported from the status of guest.
 
 Peronto
 
 v.
 
 Cootware,
 
 281 Mich., 664, 275 N. W., 724;
 
 McCann
 
 v.
 
 Hoffman,
 
 9 Cal. (2d), 279, 70 P. (2d), 909;
 
 Humphreys
 
 v.
 
 San Francisco Area Council, Boy Scouts of America,
 
 129 P. (2d), 118, 120. On the other hand, since the absence of consideration for the transportation is the essence of the “host” and “guest” relationship, that relationship arises without any contract between the parties. 60 Corpus Juris Secundum, 1010, Section 399 (5);
 
 Linn
 
 v.
 
 Nored
 
 (Texas), 133 S. W. (2d), 234.
 

 Although a contract or arrangement for transportation of a passenger may be express or implied, no implied contract or obligation having the effect of increasing the liability of the motorist by reason of a “passenger” status may come into operation by reason of the mere payment of a small sum unless such payment is made under such facts and circumstances as would raise an inference of the acquiescence of the motorist in the assumption of such increased liability. In other words, to create the status of “passenger” when there is no express agreement for transportation with payment therefor, the surrounding circumstances must be such as to indicate to the motorist, as a reasonable person, that one enjoying transportation at his hands is riding as his “passenger” rather than as his “guest.” Under such circumstances the law of implied contracts in that respect must prevail.
 

 The general rule is that if the transportation of a
 
 *57
 
 rider confers a benefit only on the person to whom the ride is given, and no benefits other than such as are incidental to hospitality, good will or the like, on the person furnishing the transportation, the rider is a guest; but if his carriage tends to promote the mutual interest of both himself and driver for their common benefit, thus creating a joint business relationship between the motorist and his rider, or where the rider accompanies the driver at the instance of the latter for the purpose of having the rider render a benefit or service to the driver on a trip which is primarily for the attainment of some objective of the driver, the rider is a passenger and not a guest. 60 Corpus Juris Secundum, 1012, 1013, Section 399 (5);
 
 Scholz
 
 v.
 
 Leuer,
 
 7 Wash. (2d), 76, 109 P. (2d), 294;
 
 Peery
 
 v.
 
 Mershon,
 
 149 Fla., 351, 5 So. (2d), 694. See
 
 Chaplowe
 
 v.
 
 Powsner,
 
 119 Conn., 188, 175 A., 470, 95 A. L. R., 1177;
 
 Eubanks
 
 v.
 
 Kielsmeier,
 
 171 Wash., 484, 18 P. (2d), 48;
 
 Clendenning, Admr.,
 
 v.
 
 Simerman,
 
 220 Iowa, 739, 263 N. W., 248;
 
 Liberty Mutual Ins. Co.
 
 v.
 
 Stitzle,
 
 220 Ind., 180, 41 N. E. (2d), 133.
 

 In testing a “passenger” status, much significance must be given to the meaning of the apt term, “payment,” used in the statute. “Payment” is defined as “the delivery of money as payment, in the course of business. * * * More specifically, in
 
 laio,
 
 the discharge of a pecuniary obligation by money or what is accepted as the equivalent of a specific sum of money; ‘the satisfaction, by or in the name of the debtor, to the creditor, of what is due, with the object to put an end to the obligation’ * * *. The thing given in discharge of a debt or fulfillment of a promise * * See Century Dictionary (Encyclopedia Ed.).
 

 It is quite apparent that, running through the denotation of the word “payment,” there is the implication of debt or obligation either expressly or impliedly as
 
 *58
 
 sumed and its satisfaction and discharge in some kind of specificity and equivalence. There must be some mutual intention on the part of both the rider in and the driver of the motor vehicle to create the status of “passenger” before it can come into being, and this mutual intention must have its consummation before and not after an accident to the rider. This excludes the idea of the status of “passenger” being created through mere courtesies or gratuities extended to the driver by the rider.
 

 Of course, if the owner of a motor vehicle insists upon an arrangement by which a person riding with him is obligated to share the expense of a trip, the provision thus made will preclude the relationship of “host” and “guest” notwithstanding the trip may have a social aspect.
 
 McMahon
 
 v.
 
 DeKraay, 70
 
 S. D., 180, 16 N. W. (2d), 308.
 

 In the instant case there is no claim that there was any express arrangement or agreement between the plaintiff and defendant as to her status in connection with her transportation. The determination of her status depends wholly on the implications and inferences to be drawn from the family relationship and the conduct of the parties. It is well settled that where a party voluntarily renders incidental services and there is no intention at the time that he should make a charge therefor or indicate an intention that the other should pay therefor, no recovery can be had for such services. What was intended originally as a gratuity, cannot subsequently be made the basis of an obligation.
 
 Dundee Mortgage & Trust Investment Co.
 
 v.
 
 Hughes,
 
 21 F., 169, affirmed 124 U. S., 157, 31 L. Ed., 357.
 

 In the case of
 
 Potter
 
 v.
 
 Jaurez,
 
 189 Wash., 476, 66 P. (2d), 290, it was held that one riding in an automobile with another at the latter’s invitation without
 
 *59
 
 previous understanding as to the sharing of the expenses of the trip, is a mere “guest” within a statute barring recovery by invited guests for injuries sustained, though such one gratuitously makes a return favor by payment for meals and gasoline.
 

 In the case of
 
 Van Auker
 
 v.
 
 Steckley’s Hybrid Seed Corn Co.,
 
 143 Neb., 24, 8 N. W. (2d), 451, it was held that a person riding in an automobile is a guest if his carriage confers a benefit on himself only and no benefit on the operator except such as is incidental to hospitality or a mere gratuity.
 

 In the instant case, the family relationship of the parties — mother-in-law and son-in-law — residing together in the same home, constitutes an important factor. Ordinarily, where seryices are rendered by one person for another, which are knowingly and voluntarily accepted by the latter, even though there is no express agreement, the law presumes that such services were given and received with the expectation of payment therefor and implies a promise to pay what the services are reasonably worth; but the scope of this rule is subject to a modification where a kinship by blood or marriage exists between the party who renders and the party who accepts the services. By the weight of authority, the evidential effect of the fact of such relationship by blood or marriage, either alone or in combination with a membership in the same household, is not merely to rebut the ordinary presumption of an agreement to pay for services rendered, but to raise an affirmative presumption which precludes the party who has rendered the services from recovering unless he qan produce evidence of a specific agreement for compensation or show circumstances from which an inference will arise that a promise to pay was made. Or, stated differently, “a member of a family rendering services to another
 
 *60
 
 member of the same household can recover therefor only upon proof of express contract or circumstances from which a reasonable inference will arise that a promise to pay was in fact made.” 12 American Jurisprudence, 501, Section 5. See, also,
 
 People
 
 v.
 
 Porter,
 
 287 Ill., 401, 123 N. E., 59, 7 A. L. R., 1041;
 
 Peters
 
 v.
 
 Estate of
 
 Poro, 96 Vt., 95, 117 A., 244, 25 A. L. R., 615;
 
 Rotea
 
 v.
 
 Izuel, Exr.,
 
 14 Cal. (2d), 605, 95 P. (2d), 927, 125 A. L. R., 1424, and annotation on page 1429.
 

 By parity of reasoning, although the mere fact that a party riding in an automobile at the invitation of the driver stands in a family relation to the driver does not necessarily preclude him from being a “passenger,” yet the evidential effect of the fact of such relationship raises a presumption which precludes the rider from claiming the status of a “passenger” unless there is proof of an express arrangement for a passenger status or proof of circumstances which disclose that a “passenger” status was intended and understood by both parties. See
 
 Finn
 
 v.
 
 Drtina,
 
 30 Wash. (2d), 814, 194 P. (2d), 347, 2 A. L. R. (2d), 919;
 
 Hale
 
 v.
 
 Hale, supra;
 
 Bradley,
 
 Admr.,
 
 v.
 
 Clarke,
 
 118 Conn., 641, 174 A., 72.
 

 Let us now look at the record and consider the status of the plaintiff as disclosed by the evidence.
 

 The plaintiff, as the mother-in-law of the defendant, had lived with the latter and his wife and children as one family for almost 17 years. Since she had taken employment and received wages, she paid to the defendant by specific arrangement $3 a week for room and board. The plaintiff’s testimony as to the circumstances under which she made payment for oil and gasoline before the controversy arose was as follows:
 

 “Q. When you rode in your son-in-law’s automobile who paid for the gas and oil? A. He did, and I would give him a dollar.
 

 
 *61
 
 “Q. You would give Mm a dollar how often? How often did you give him a dollar? A. I just can’t say; we would drive into a filling station and I would give him a dollar when he would get gas.
 

 “Q. What is your best recollection? A. I just don’t know, I guess about every two weeks.
 

 “Q. You would say on the average you would give him a dollar once every two weeks? A. Yes.
 

 “Q. Now that arrangement, how long did that arrangement continue? A. Until 1 got hurt.
 

 “Q. From the time you started to work? A. Yes, until 1 got hurt.
 

 * # # *
 

 “ Q. I see, when you drive up to a filling station you give him a dollar. What, if anything, do you say when you would do that? What do you say? Do you say, ‘Lloyd, here is a dollar,’ or can you g’ive us or this jury any idea what you say about that? A. No, I don’t know as I say anything, I just hand him the dollar, and he takes it, that is all.
 

 “Q. Well, do you tell him that it is to help with the operating expenses of the car when you hand him this dollar occasionally? What I am asking you is what do you say to him, if anything, about the dollar? A. Sometimes 1 say, ‘Here is a dollar for the gas,’ or, ‘I will pay a'dollar this time,’ or something like that.
 

 “Q. You say when you hand him this dollar you say something about this dollar when you hand it to him? A. Not always.
 

 “Q. Always? A. No, not always I don’t.
 

 ‘‘Q. Then is it fair to say this, that you occasionally hand him a dollar, and sometimes you do say, ‘Now, Lloyd, this is for some of the expense,’ is that fair? A. That’s right.
 

 “Q. What do you say, Mrs. Hasbrook, as to whether or not you say to Mr. Wingate, when you hand him
 
 *62
 
 the dollar, ‘That is for gas and oil’? A. No, I don’t think I say that, it’s just that I will pay a dollar on the gas today or something like that.”
 

 The testimony of the defendant was that he bought all of his own oil and gas and that the only time that Mrs. Hasbrook gave him a dollar was when he was going after materials for her own house or going to haul something for her.
 

 There was some claim that when the plaintiff and defendant went to work in the morning she would leave her car at home and that it was sometimes used by her daughter for errands and that this was some compensation for the transportation of the plaintiff. On that subject the plaintiff testified as follows:
 

 “Q. Now while you and your son-in-law were at work what was done with your car? A. My daughter used it for getting groceries or to take the boys to school or to go to the doctor.
 

 “Q. She used it for family purposes? A. Yes.
 

 # * * ft *
 

 “Q. What did you say to your daughter and what did she say to you about that? A. That is too long ago, that is four years.
 

 “Q. Well, if it is a contract for riding it ought not to be too old to tell this jury, ought it. Is there anything you can think about what you said and what your daughter said in connection with their use of your car? A. Just that I would ride with Lloyd and she could use my car.
 

 “Q. And if you could not ride with Lloyd she couldn’t use the car? A. Oh, no.
 

 “Q. No, not that. It’s just like any grandmother, she could use the car whether you rode with Lloyd or not, couldn’t she? A. Yes.”
 

 On this subject the defendant testified as follows:
 

 ‘‘Q. Before this trial, Mr. Wingate, did you ever hear that your mother-in-law was claiming that the
 
 *63
 
 use of her car by your family was part payment for her transportation in your car to and from work? A. No, sir.”
 

 Applying the hereinbefore suggested tests to the evidence, considered in its most favorable light for the plaintiff, what conclusions of law must be drawn in the instant case? In the first place there was no express contract for transportation between the parties. In the second place, they were in uo sense joint adventurers having a mutual business interest in the trip. Although each was making the trip for his own business purpose, the trip had no common business aspect which affected both parties jointly or the status of the plaintiff. It is clear that a mere agreement or concord of minds on the part of the plaintiff and defendant to accompany one another on the trips in question, but without an intent to enter into a mutual obligation, is not sufficient to create the relationship of joint adventurer and thus make the plaintiff a “passenger.”
 
 Finn
 
 v. Drtina,
 
 supra.
 

 Since there was no joint adventure between plaintiff and defendant in the instant case to make the trip necessary, and since the transportation of the plaintiff was not necessary for any business project of the defendant, her transportation was clearly for her own benefit. The question then arises, in the absence of any express agreement on the subject, what motivated the parties, concerning the transportation of the plaintiff? Did the defendant, without any binding obligation in the premises, transport the plaintiff primarily as an accommodation to his mother-in-law or was it because she contributed a small sum to the operating expense of the car? On the other hand, did the plaintiff, without agreement, make the dollar contributions primarily to pay for the transportation or primarily as a courtesy and gratuity to her son-in-law for his kindness to her? These queries must be
 
 *64
 
 answered from the evidence, and clearly there is no evidence which would give the plaintiff a “passenger” status.
 

 The defendant was in no position to demand payment for transportation from the plaintiff, and the plaintiff likewise, was in no position to say, in the absence of an express understanding, that she was riding with the defendant under circumstances which took her out of the status of a “guest” and placed her in the status of a “passenger.”
 

 Finally, when the family relationship between the plaintiff and defendant is taken into consideration, giving rise to a presumption that there was no payment for transportation intended in the absence of a specific agreement for compensation, or circumstances from which a reasonable inference will arise that a promise, to pay was in fact made, coupled with the lack of any proof of payment for transportation as such, in our opinion, the plaintiff has utterly failed to carry the burden required of her to make out a “passenger” status, and the trial court should have directed a verdict for the defendant.
 
 Workman, Admx., v. Thompson,
 
 141 Ohio St., 287, 47 N. E. (2d), 996.
 

 The judgment of the Court of Appeals is reversed and final judgment is entered for the defendant.
 

 Judgment reversed.
 

 Weygandt, C. J., Matthias, Zimmerman, Stewart, Turner and Taft, JJ., concur.