James HUGUENOT, Adm'r, of James E. Huguenot (Deceased), Appellant,

v.

Marvin SCAFF, Appellee.

Ernest Virgil RENFROE, Appellant,

v.

Marvin SCAFF, Appellee.

Court of Appeals of Kentucky.

Oct. 19, 1956.

Phipps & Phipps, Creech & Cox, Ashland, for appellants.

John W. McKenzie, Ashland, for appellee.

SIMS, Judge.

These consolidated cases grew out of an automobile accident occurring in the State of Ohio which resulted in the death of James E. Huguenot, Jr., and in personal injuries to Ernest Virgil Renfroe, both of whom were riding in a car owned and driven by defendant, Marvin Scaff. The administrator of Huguenot sued for $16,000 damages to his decedent's estate and Renfroe sued for $2,650 damages for personal injuries. In each answer defendant pleaded a general denial, the so-called "Guest Statute" of Ohio and contributory negligence on the part of Huguenot and Renfroe. At the conclusion of plaintiffs' evidence the court directed verdicts for defendant on the theory plaintiffs were defendant's guests and the Ohio statute precluded them from recovering.

The "Guest Statute" set out verbatim in each answer is § 4515.02, Ohio Revised Code and reads:

"The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or

death of a guest, resulting from the operation of said motor vehicle, while such guest is being transported without payment therefor in or upon said motor vehicle, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner, or person responsible for the operation of said motor vehicle."

There is no contrariety in the facts. Huguenot, Renfroe and Scaff were construction workers and friends of long standing. The three lived in Ashland, Ky., but had on Sunday, January 16, 1955, driven to Toledo, Ohio, in Scaff's car, to secure employment. They were successful in obtaining jobs and went to work. At the end of the first week's work, they decided to return in Scaff's car to Ashland to spend the weekend with their families and to take their soiled laundry home and bring back clean clothes. Each of the three took a beer before starting, then each took another beer when they stopped on the road for supper, but the record shows none of them became under the influence of alcohol.

It was their custom when they rode to or from work in Scaff's car that each would bear one third of the expense of the oil and gasoline used. Scaff testified they had a mutual understanding to that effect. On the night of the accident Scaff stopped for gasoline at Maumee, Ohio, and Renfroe told Scaff he did not have any change but would pay his part as soon as he got some, which he did soon thereafter and paid Scaff $2. Renfroe did not hear what was said between Huguenot and Scaff but saw the former pay Scaff some money before they left Toledo.

Not long after supper Renfroe got on the back seat and was asleep when the accident happened around 9 o'clock, hence knew nothing as to how it occurred. As Huguenot was killed, the only account of the accident is that given by Scaff.

At the point of the accident the highway runs north and south. Going south, the direction Scaff was driving, the highway

turns slightly to the east. It had been raining, the night was dark and Scaff was driving at approximately 50 miles an hour when he approached the curve but reduced his speed as he went into the curve. Scaff testified that in the curve two cars approached him from the opposite direction. One was attempting to pass the other and when he first saw them they were some 50 or 75 feet from him. The car which was attempting to pass the other came over on Scaff's side of the road, and to avoid a head-on collision Scaff pulled his car sharply to his right, ran on the soft berm, lost control of the car, struck a concrete culvert and overturned.

Plaintiffs insist that since Huguenot and Renfroe contributed to the gasoline expense and as they claim the trip involved business, they were passengers and not guests. It is insisted by defendant the trip was for pleasure and the plaintiffs were his guests and not his passengers, therefore under the Ohio statute above quoted he is not liable, as there was no evidence of willful or wanton misconduct upon his part.

Furthermore, Scaff contends as he was confronted with a sudden emergency not of his making, he is not guilty of negligence if he made such a choice as a person of ordinary prudence placed in a position where he had to act instantly might make, even though he did not make the wisest choice and one that would have been required in the exercise of ordinary care but for the emergency.

Since we have reached the conclusion that Huguenot and Renfroe were not passengers but were guests in Scaff's automobile at the time of the accident and cannot recover under the Ohio statute, we do not reach the question of Scaff's negligence.

▇▇▇ As this accident occurred in Ohio, both sides admit the cause must be tried under the law of that State. The Ohio Supreme Court in a leading case of Hasbrook v. Wingate, 152 Ohio St. 50, 87 N.E.2d 87, 10 A.L.R.2d 1342, held that although a

contract or agreement for transportation of a passenger may be expressed or implied, no implied obligation having the effect of increasing the liability of the motorist by reason of the "passenger" status may come into operation because of the payment of a small sum. The court said there was an exception to the rule if such payment would raise the inference that the owner acquiesced in his increased liability, but the circumstances must be such as to indicate to a reasonable person the rider is a passenger rather than a guest. The understanding must be such that the car owner may recover from the rider the reasonable value of the transportation, and any expense money paid by the rider not commensurate with the cost of such transportation will not put the rider out of the status of a "guest". This rule was later approved in Birmelin v. Gist, 162 Ohio St. 98, 120 N.E. 2d 711.

In Ansback v. Greenberg, Ky., 256 S.W. 2d 1, 2, we had this same question, except it involved Georgia law to the effect that a guest in an automobile cannot recover from the owner for accidental injuries unless the accident causing the injury amounted to gross negligence. We there made this statement, citing many authorities in support thereof:

"The weight of authority is that the sharing of the cost of gasoline and oil consumed on a trip, when the trip is taken for pleasure or social purposes, does not transform into a passenger one who without such exchange would be a guest."

Plaintiffs insist this was not a social or pleasure trip but was made for business purposes and under Ackerman v. Steiner, Ohio App., 59 N.E.2d 950, 951, the "Guest Statute" does not apply. True, the Ackerman opinion quoted this from Duncan v. Hutchinson, 139 Ohio St. 185, 39 N.E.2d

140: "'The court is of the opinion that if the trips are made by the defendants with the plaintiff for a purely social or incidental purpose, the [guest] statute applies, but if they have a business aspect or provide a recognized mutual economic benefit, the exemption otherwise granted to the plaintiff by the statute, does not apply.'"

In the circumstances heretofore set out, it cannot be said with reason this was in any sense a business trip. It was nothing more than a social or pleasure trip, and the contributions made by plaintiffs under their mutual agreement with defendant to bear their share of the cost of the oil and gasoline used did not under the Hasbrook and Birmelin opinions change plaintiffs' status from that of guests to passengers.

Plaintiffs lean heavily on McMahan v. McMahan, Tenn.App., 276 S.W.2d 738, which deals with this same Ohio statute. There, the court said the case was properly submitted to the jury on the question of whether the riders were guests or passengers. In that case the plaintiff testified he agreed to pay defendant "round trip train fare" from Cleveland, Ohio, to Sevier County, Tennessee, in consideration of defendant taking him in defendant's car. Furthermore, plaintiff there testified that "train fare" was agreed upon between them for plaintiff's son, who made the return trip from Tennessee to Cleveland. The money was never paid but after the accident in Ohio, plaintiff through a relative tendered a check for the fares to defendant who refused to accept it. In those circumstances the court properly submitted to the jury the question as to whether or not plaintiffs were passengers or guests. Manifestly, the facts in the McMahan case distinguish it from the one at bar.

The trial court correctly directed verdicts in favor of Scaff and the judgments are affirmed.