SABO, JR., APPELLEE, v. MARN, APPELLANT.*

(No. 519—Decided November 27, 1956.)

*Messrs. Pontius & Barsky,* for appellee.
*Messrs. Payne & Hermann* and *Mr. C. D. Lambros,* for appellant.

*Motion to certify the record overruled, May 22, 1957.

GRIFFITH, J. John Sabo, Jr., appellee herein, a young man of the age of 20 years, was a friend and fellow-employee of the appellant, Robert F. Marn. They each worked at the. Allied Resins Plant in Conneaut. Marn was eighteen years of age, had only a limited driver's permit and was the owner and operator of the Ford car in which appellee was riding at the time he was injured. Sabo was a fully licensed driver.

On December 29, 1950, Marn went to work on the 4 p. m. to 12:30 a. m. shift. After work, with no one else in his car, he drove his Ford from Allied Resins to the Blue Moon Restaurant, located on route 20, a short distance east of Conneaut and just over the line in Pennsylvania.

In the parking lot there, he met the appellee, Sabo, who was about to leave in his own car. After some conversation between Sabo and Marn, it was agreed by them that they would go in Marn's Ford to Jimmy's Truck Stop, which was a restaurant some distance west of Conneaut on route 20.

There is a conflict in the evidence as to just what was said there at the parking lot before Sabo entered Marn's car. Sabo contends that Marn said to him: ''Well, leave your car and go with me, because I don't have a driver's license. I just got a permit. I have to have someone with a driver's license in my car.''

It was further agreed that Marn would return Sabo to the Blue Moon parking lot after they made the trip so he could get his car. Marn says he does not remember making the statements, although he may have done so.

There is evidence that the trip planned was to Jimmy's Truck Stop to get a cup of coffee. There is evidence that appellant, Marn, desired Sabo to go with him because Marn did not have a driver's license and desired Sabo, who was a licensed driver, to accompany him in order to comply with the requirements of Section 4507.05, Revised Code.

Sabo got in Marn's car, Marn driving it, and they drove to Conneaut, picked up three other friends there at or near the Eagle's Lodge and drove west on route 20 to Jimmy's Truck Stop, with Sabo riding in the front seat at all times. At the truck stop, they all had coffee, each paying his own bill.

 

After enjoying a cup of coffee, consuming only a short period of time, they again entered Marn's car, with Marn at the wheel, Sabo sitting in the front seat at the right with one James Cool, a licensed driver and friend of both, seated between the driver, Marn, and Sabo. Marn drove back east on route 20.

The pavement was icy in spots. Sabo dozed off while they were enroute on this return trip. Marn, in an effort to avoid a collision as he was about to pass another car, put on his brakes, causing the car to skid on an icy spot. The car, crossing over to the north side of the road, crashed into a tree, with the right side of the car up against the tree.

Sabo was seriously injured. He brought this action to recover damages for the injuries he sustained. He also, in his petition, states that he was riding with Marn at his invitation and request in order that he, Marn, might lawfully operate his motor vehicle; that Sabo complied with Marn's request and thereupon became a passenger in Marn's motor vehicle for the purposes aforementioned.

There are a number of assignments of error in this appeal, but, in the view that we take of this case, it is necessary to discuss only the second assignment of error, which is that the court erred in overruling defendant's motion for a directed verdict at the close of all the evidence, as the consideration of this assignment of error disposes of the whole case.

Wilful or wanton misconduct is not in this case, either by the pleadings or by any evidence. Unless, under the statute, Sabo stood in the category of a passenger, he was not entitled to recover. Upon this assignment of error, it is contended by Sabo:

1. That Marn requested him to ride with him.

2. That the purpose of the invitation was to enable Marn to lawfully operate his car on the highway since he had no operator's license.

3. That the services were for the benefit of Marn thereby rendering him, the plaintiff, a passenger in the car.

Did the trial court err in overruling the motion for a directed verdict at the close of all the evidence? Was the plain-

tiff, Sabo, a guest in the automobile of the defendant, Marn, within the meaning of the guest statute? (Section 4515.02, Revised Code.)

It should be noted that the jury, by answering special interrogatories Nos. 4 and 10, presented by the defendant, Marn, found that the plaintiff was not a guest; that he was a passenger, and that the defendant's negligence was the proximate cause of the plaintiff's injuries.

In the case of *Hasbrook* v. *Wingate* (1949), 152 Ohio St., 50, 87 N. E. (2d), 87, 10 A. L. R. (2d), 1342, the syllabus reads:

"1. A person seeking to recover from a motorist for injuries suffered because of the latter's negligent operation of the car while the former was riding with him has, under Section 6308-6, General Code, the burden of showing that the rider paid or agreed to pay for his transportation.

"2. Although a contract or arrangement for the transportation of a 'passenger' may be express or implied, no implied contract or obligation having the effect of increasing the risk of liability of the motorist by reason of a 'passenger' status may come into operation by reason of the mere payment of a small sum, unless such payment is made under such facts and circumstances as raise an inference of the acquiescence of the motorist in the assumption of such increased risk of liability.

"3. Where, in the carrying of a rider, a motor vehicle's direct operation tends to promote the mutual interests of both the rider and driver, thus creating a joint business relationship between them, or where the rider accompanies the driver at the instance of the latter for the purpose of having the rider render a benefit or service to the driver on a trip which is primarily for the attainment of some objective of the driver, the rider is a 'passenger' and not a 'guest'; but if the carriage confers a benefit only on the rider and no benefit other than such as is incidental to hospitality, good will or the like is conferred on the driver, the rider is a 'guest.'

"4. The test whether a passenger status existed at the time of an accident resulting in an injury to the passenger is the existence of the right of the motorist host to recover in an action at law the reasonable or agreed value of the transportation furnished.

"5. Although the mere fact that a person riding in an automobile at the invitation of the driver stands in a family relationship to the driver does not necessarily preclude the former from being a 'passenger,' yet the evidential effect of such relationship raises a presumption, which precludes the rider from claiming the status of 'passenger,' unless there is proof of an express arrangement for a 'passenger' status or proof of circumstances which disclose that a passenger status was intended and understood by both the driver and rider."

In the case of *Birmelin, Admx., v. Gist, Admx.* (1954), 162 Ohio St., 98, 120 N. E. (2d), 711, the syllabus reads:

"1. Under the guest statute, Section 6308-6, General Code (Section 4515.02, Revised Code), one who is riding in a motor vehicle with the owner-operator or person responsibile for the operation thereof is a guest and not a paying passenger, unless there is shown a contractual arrangement, express or implied, for the payment of compensation to the owner or driver for the transportation furnished or he is rendering a benefit to the driver primarily for the attainment of some objective of the latter.

"2. In such a case, a mere offer by the rider to pay for the gasoline on a trip or to furnish some other reciprocal favor for the accommodation of the ride does not furnish the basis for a contractual relationship, unless there is evidence that such payment or furnishing formed the basis of such a contractual arrangement as would give the owner or driver a right to recover in an action at law on the offer made by the rider."

In the case of *Snyder v. Milligan,* 52 Ohio App., 185, 3 N. E., (2d), 633, the syllabus reads:

"Where the relationship between one furnishing transportation by automobile and the person being transported has no connection with a business transaction, and there is no benefit, mutual or otherwise, which can be regarded as a consideration for the transportation, the person being transported is, as a matter of law, a guest, within the meaning of Section 6308-6, General Code."

There exists a twilight zone between just who is a guest and who is a passenger, and it is difficult to lay down any iron-

clad rule by which you may measure and classify them correctly. The particular facts of each case are all controlling.

We have before us in this case two young men who have been friends for at least one and a half years, and who were pals, riding about evenings two or three times a week in one or the other's car. There was no express contract between these young men. They were in no sense joint adventurers having a mutual business interest in this trip. In fact, it was not a business trip at all but a social excursion, the purpose of which was to have a ride and get a cup of coffee at Jimmy's Truck Stop.

There was a meeting of the minds on the part of these two men at the Blue Moon parking lot that Sabo would accompany Marn to the truck stop, and that Marn would return him after the trip to the parking lot where Sabo had parked his car. We find no evidence in the record tending to prove that there was any business relationship between Sabo and Marn in connection with this trip. It is apparent that the relationship between them was purely social, and the trip had no connection with any contract.

Under the circumstances, we hold that the trial court was in error when it refused to direct a verdict at the conclusion of all the evidence, since Sabo, while riding in Marn's car, was a guest, as a matter of law. The trial court should have directed a verdict for the defendant at that time.

The judgment of the Common Pleas Court is reversed, and final judgment is rendered for the defendant.

*Judgment reversed.*

NICHOLS, P. J., and PHILLIPS, J., concur.