Hyer et al., Appellants, *v.* Velinoff et al., Appellees.

(No. 10013—Decided August 31, 1971.)

*Messrs. Dunbar, Kienzle & Murphey* and *Mr. Dale A. Crawford,* for appellants.
*Messrs. Caren, Lane, Huggard, Alton & Horst* and *Mr. David L. Day,* for appellees.

Whiteside, J. This is an appeal upon questions of law from a judgment of the Franklin County Municipal Court.

This action involves the application of the airplane guest statute. At trial, the court directed a verdict in favor of defendants, appellees herein, upon the ground that plaintiff John F. Hyer, appellant herein, was a guest as a matter of law, but submitted the case to the jury upon the issue of willful and wanton misconduct. The jury returned a verdict for defendants upon that issue.

The plaintiffs have assigned two assignments of error, as follows:

"1. The trial court erred by directing, at the close of the plaintiffs' case, that John F. Hyer was a 'guest' in the airplane owned and operated by defendants.

"2. The trial court erred in not allowing testimony as to the relationship between the Multicon entities and the financial dependence by Mar-Vel upon such entities."

Plaintiff Hyer, an architect, was the regional manager of planning and design for plaintiff-appellant Multicon, an Ohio limited partnership, having its principal place of business in Columbus, Ohio. His duties included those of architectural survey of sites, determining architectural feasibility to develop the type of garden apartment communities built by the partnership, site planning for those communities, architectural design of the various buildings, and supervision of construction on the sites. The actual construction was performed by a related corporation, Multicon Construction Corporation, as general contractor. Plaintiff Hyer represented the owner in dealing with the general contractor which, in turn, contracted and dealt with various subcontractors.

Defendant Mar-Vel Sheet Metal Corporation was a subcontractor on some of these projects, including one called Georgetown of Lindhurst. Defendant John R. Velinoff was vice-president of that corporation.

On March 11, 1969, plaintiff Hyer planned a trip to Cleveland, Ohio, for two purposes: First, to attend a meeting in connection with a project called Georgetown of the Highlands Phase II, and second, to review construction progress at Georgetown of Lindhurst. a project of some 200 plus units, which was about 40 per cent completed. He

was to be accompanied on this trip by Jim Sherwood, construction manager for the Cleveland area for Multicon Construction Corporation.

Plaintiff Hyer planned to fly to Cleveland by commerical airline. While in the process of checking in for this flight, he was approached by Sherwood and accompanied him to an automobile parked outside the main airport terminal, in which automobile defendant John Velinoff and his father, Clarence Velinoff, president of defendant Mar-Vel, were seated. Plaintiff Hyer was informed that the Mar-Vel people were flying to Cleveland in their own aircraft, and consented to ride with them.

Defendant Velinoff had earlier picked up Sherwood at his residence and they had driven to the airport together. Plaintiff Hyer, Sherwood, and defendant Velinoff then proceeded to fly to the Cleveland area in a small, single-engine airplane owned by the defendant Mar-Vel. The purpose of the trip on the part of defendant Velinoff was to turn in a construction draw for the Georgetown of Lindhurst project on behalf of defendant Mar-Vel. Defendant Velinoff piloted the aircraft.

At or about Richfield, Ohio, the aircraft encountered bad weather conditions, and crash-landed in a field, as a result of which plaintiff Hyer sustained personal injuries and property damage, and the plaintiff Multicon lost some personal property.

The first assignment of error raises the issue of whether plaintiff Hyer's status can be determined as a matter of law to be that of a guest within the meaning of R. C. 4561.151, or whether that issue is one of fact. R. C. 4561.-151 reads, as follows:

"The owner, operator, or person responsible for the operation of an aircraft shall not be liable for loss or damage arising from injuries to or death of a guest, resulting from the operation of said aircraft, while such guest is being transported without payment therefor in or upon said aircraft, unless such injuries or death are caused by the willful or wanton misconduct of such owner. operator, or person responsible for the operation of said aircraft."

Such statute grants the owner or operator of an aircraft immunity from liability for injuries to a guest transported without payment for the transportation, unless such injuries are caused by willful or wanton misconduct on the part of such owner or operator.

At the outset, it must be noted that the guest statute does not grant immunity from liability to everyone who may be riding in an aircraft, but only as to such riders who are "guests." Even with respect to "guests," the immunity is afforded only if there is no payment for the transportation.

This distinction is important because there has, on occasion, been an assumption that a rider is *per se* a "guest" unless he has paid for the transportation, in which case he is not a "guest." However, a careful examination of the statute clearly indicates that there may be riders who are not guests and there may be guests as to whom no immunity from liability is provided because the guest has paid for the transportation.

Had the General Assembly intended that the guest statute apply to all riders, *i. e.*, all passengers. being transported without payment therefor, we must assume that the General Assembly would have utilized the term "rider" or "passenger," rather than the term "guest" in the guest statute. We therefore conclude that there may be riders, or passengers, who are not guests because of the circumstances under which the transportation is provided, even though no "payment" is made for the transportation.

Since R. C. 4561.151, the aircraft guest statute, is essentially identical in language to R. C. 4515.02, the motor vehicle guest statute cases construing the latter are in point.

In *Burrow* v. *Porterfield* (1960), 171 Ohio St. 28, the Supreme Court, at pages 35-37, attempted to enumerate the circumstances under which a rider is and is not a guest, as follows:

"Our decisions indicate that a rider is a guest within the purview of Section 4515.02, Revised Code, where one of the following relationships exists:

"(1) Where the transportation is furnished solely for the business or material interest or pleasure of the rider, or where the transportation is furnished solely as an act of social courtesy by the driver. *Dorn* v. *Village of North Olmsted, supra* (133 Ohio St. 375), paragraph four of the syllabus; *Hasbrook* v. *Wingate, supra* (152 Ohio St. 50), paragraph three of the syllabus; *O'Rourke, Admx.,* v. *Gunsley,* 154 Ohio St. 375, 96 N. E. (2d), 1, paragraph two of the syllabus.

"(2) Where the transportation is furnished solely for the social and pleasure purposes of both the rider and driver. *Duncan* v. *Hutchinson, supra* (139 Ohio St. 185).

"(3) Where the rider pays expense money or gives other valuable consideration to the driver as an act of social courtesy and not as payment for transportation. *Duncan* v. *Hutchinson, supra* (139 Ohio St. 185), at page 191.

"(4) Where expense money is paid or other valuable consideration is given by the rider as a result of an implied agreement to pay for transportation, and such money or other consideration is not substantially commensurate with the cost of such transportation to the driver. *Hasbrook* v. *Wingate, supra* (152 Ohio St. 50), paragraph two of the syllabus.

"On the other hand, our decisions indicate that a rider is a passenger and not a guest within the purview of Section 4515.02, Revised Code, where one of the following relationships between driver and rider exists:

"(1) Where the transportation is furnished for the sole business or material interests of the driver. *Dorn* v. *Village of North Olmsted, supra* (133 Ohio St. 375), paragraph one of the syllabus; *Birmelin* v. *Gist, supra* (162 Ohio St. 98), paragraph one of the syllabus; *O'Rourke* v. *Gunsley, supra* (154 Ohio St. 375), paragraph two of the syllabus.

"(2) Where the transportation is furnished for the mutual business or material interests of both the rider and driver. *Hasbrook* v. *Wingate, supra* (152 Ohio St. 50), paragraph three of the syllabus; *Duncan* v. *Hutchinson, supra* (139 Ohio St. 185), at page 189,

"(3) Where expense money is paid or other valuable consideration is given by the rider as a result of an implied agreement to pay for transportation, and such money or other consideration is substantially commensurate with the cost of such transportation to the driver. *Hasbrook* v. *Wingate, supra* (152 Ohio St. 50), paragraph two of the syllabus; *Miller* v. *Fairley, supra* (141 Ohio St. 327), at page 338.

"(4) Where the driver insists upon his rider paying expense money or giving other property as consideration for transportation, an express contract for transportation exists in the nature of a business arrangement, and such rider is a passenger notwithstanding his payment for transportation may be inadequate or that the purpose of the transportation may have a social aspect. *Hasbrook* v. *Wingate, supra* (152 Ohio St. 50), at page 58; *Miller* v. *Fairley, supra* (141 Ohio St. 327), at pages 337 and 338.

"In conclusion, the principles announced by this court make it clear that the driver or owner of a motor vehicle may waive the protection of the guest statute either by accepting a material or business benefit from his rider, or by accepting expense money or other property, as payment for furnishing such rider transportation."

As to the first and second category of "passenger," the rider is not a guest because of the circumstances under which the transportation is furnished, whereas as to the third and fourth category of "passenger" the rider may be a guest, but there is no immunity from liability because the guest is not being transported "without payment therefor."

Unfortunately, plaintiff Hyer did not clearly fall in any of the categories of "guest" or "passenger" outlined by the Supreme Court, above. However, in *Dorn* v. *North Olmsted* (1938), 133 Ohio St. 375, the term "guest" is defined as follows in the fourth paragraph of the syllabus:

"Within the meaning of Section 6308-6, General Code, a guest is one who is invited, either directly or by implication, to enjoy the hospitality of the driver of a motor vehicle, who accepts such hospitality and takes a ride either

for his own pleasure or on his business without making any return to or conferring any benefit upon the driver of the motor vehicle other than the mere pleasure of his company.''

There is no indication whatsoever that there was any prior acquaintance or social or direct business relationship between plaintiff Hyer and defendants. Plaintiff Hyer was on a business trip, in part to review construction progress on a project on which defendant Mar-Vel Sheet Metal was a subcontractor. Defendant Velinoff was on a business trip on behalf of Mar-Vel to turn in a construction draw for a progress payment for work performed on the same project. There is no indication in the record as to whether the construction draw was subject to review by plaintiff Hyer prior to payment.

Accompanying them on the trip was Sherwood, construction manager for Multicon Construction Corporation. By prearrangement (not explained), Sherwood was to accompany defendant Velinoff on the flight. Plaintiff Hyer was to meet with Sherwood in Cleveland.

Part of the difficulty in this case is the fact that Sherwood did not testify and there was little direct evidence as to what transpired between either party and Sherwood. This resulted in part from the trial court's exclusion of testimony concerning statements made by Sherwood, even though such statements were pertinent for the fact that they were made and were not offered to prove the truth of any matter asserted, and thus were not hearsay. However, plaintiffs did not proffer testimony and have made no assignment of error herein in connection therewith.

Defendant Velinoff testified that although plaintiff Hyer was included on the flight, he, Velinoff, did not invite him. Rather, the evidence indicates that plaintiff Hyer was included on the flight at the invitation of Sherwood. It might, therefore, be inferred that defendant Velinoff felt he had no choice but to include Hyer on the flight if Sherwood desired Hyer to accompany them. The only connection between defendants and Sherwood, in evidence, was that defendants were a subcontractor for Multicon Con-

struction Corporation, of which Sherwood was construction manager.

The evidence indicates that the only relationship existing between plaintiff Hyer and defendants was a business relationship and that, in connection with the flight in question, they were brought together by their respective business relationships with Sherwood. The evidence permitted a factual finding that defendants furnished the transportation to plaintiff Hyer as a matter of a business accommodation to Sherwood and Multicon Construction Corporation, rather than a social accommodation to Hyer.

Where transportation is furnished solely as a business accomodation, rather than a social accommodation, the person furnished such transportation is not a guest within the meaning of the guest statute. Stated in other words, a person furnished transportation is a guest when such transportation is furnished as a social accomodation, but is not a guest where such transportation is furnished as a business accommodation.

Transportation is furnished as a business accomodation where it is furnished with the expectation of receiving a business benefit in return for providing such transportation. Here, it cannot be concluded as a matter of law that defendant furnished the transportation motivated solely by generosity toward plaintiff Hyer. Motivation, like intent, being subjective, is usually for the trier of facts, to be determined from all the surrounding circumstances.

Where transportation is gratuitously provided to another, motivated solely by a desire to perform a benefit upon the person being provided the transportation, such person is a guest even though the parties may be only business acquaintances. Where, on the other hand, transportation is gratuitously provided to a business acquaintance, motivated by an expectation of obtaining a business benefit, either from the person being provided the transportation, his employer, or some third person, the person provided such transportation is not a guest within the meaning of the guest statute.

If the evidence herein is construed most favorably

for plaintiffs, reasonable minds could reach different conclusions as to whether plaintiff Hyer was a guest. Therefore, the trial court should have submitted that issue to the jury, and erred in directing a verdict for defendants thereon.

In regard to the second assignment of error, plaintiffs refer to two questions to which the court sustained objections. The first pertained to the relationship between the company plaintiff Hyer worked for, and Multicon Construction Company. The sustaining of the objection to that question is not prejudicial in view of the fact that the relationship was already in evidence by prior testimony. The testimony would have been cumulative, at most.

The second question was directed to defendant Velinoff on cross-examination and asked him to "state what percentage you believe Mar-Vel's total output was to Multicon Construction Corporation and their gross dollar." The question was somewhat ambiguous.

Plaintiffs now contend that the purpose of the question was to show that Mar-Vel Corporation was financially dependent upon its present and future business with Multicon Construction Corporation. Plaintiffs did not otherwise attempt to pursue this issue by other questioning. Furthermore, at trial, this purpose was not advanced in support of the question; rather, it was stated by counsel that they wanted to show "that the company is making a lot of money from the corporation."

In the context in which the question was asked, we find that the sustaining of the objection was not prejudicial error. Accordingly, plaintiffs' second assignment of error is not well taken.

For the foregoing reasons, the judgment of the Franklin County Municipal Court is reversed, and the cause is remanded to that court for a new trial.

*Judgment reversed.*

STRAUSBAUGH, J., concurs.

HOLMES, J., dissenting. I must dissent from the decision of my colleagues in that I believe the plaintiff Hyer to be a "guest" within the intent and meaning of Ohio law and the interpretation thereof.

As to who is a guest under the motor vehicle statute, 6A Ohio Jurisprudence 2d 226, Automobiles, Section 254, sets forth the following:

"A 'guest' within the meaning of the guest statute is one who is invited, either directly or by implication, to enjoy the hospitality of the driver of a motor vehicle, and who accepts such hospitality and takes a ride either for his own pleasure or on his own business without making any return to or conferring any benefit upon the driver of the motor vehicle other than the mere pleasure of his company. In other words, one is a guest where there is no business relationship between the parties, either of present or prospective contract, which provided the occasion for the transportation, and no benefit, mutual or otherwise, which could be regarded as a consideration, the only relationship being a social one of hospitality. * * *" (Citing *Dorn* v. *North Olmsted* (1938), 133 Ohio St. 375, and *Snyder* v. *Milligan* (1936), 52 Ohio App. 185.)

One of the early, and leading, cases concerned with construing the guest statute, then General Code Section 6308-6, was *Duncan* v. *Hutchinson* (1942), 139 Ohio St. 185. In deciding what constituted "payment" in order to take the rider out of the application of the guest statute, the court stated, at page 188:

"* * * Keeping in mind the purpose of the statute, it would seem that any expense money paid by a person for a ride in an automobile which is not substantially commensurate with the cost of such transportation will not take him out of the guest status fixed by the statute, unless payment for transportation as such was actually agreed upon. * * *"

The court went on to state the justification for such rule as follows:

"* * * The justice of this rule is based on the fact that it would be unfair to hold the motorist to liability for in-

juries to his guest due to the hazards of transportation, unless the motorist is, in turn, compensated for such transportation in a manner substantially commensurate with the cost and the hazards of the undertaking."

But then the court further enlightened us as to what, under certain circumstances, could be considered as payment in the following language:

"On the other hand, where the relationship between the automobile host and a party riding with him has a business aspect and the transportation is supplied for their mutual benefit, any payment or service rendered to the automobile host by such person for the ride will constitute 'payment therefor' and will remove the automobile host from the protection of the statute.

"It is not necessary that payment for such transportation be made in money. It is sufficient if the passenger by his presence in the automobile or by service or assistance to the operator in making the trip, compensates the operator or the owner in a material or business sense as distinguished from mere social benefit or nominal or incidental contribution to expenses. * * * "

The court then proceeded to enumerate, as follows, those situations and supportive cases which could well constitute the rider as having given payment for such ride:

"* * * (1) When the carriage is of a prospective purchaser of property which the automobile host has for sale and the trip is made for the purpose of inducing a sale * * * ; (2) when the automobile host has a financial or business interest in the time or service of the passenger and the purpose of the transportation is to take the passenger to or from his place of employment * * *; (3) when the passenger is making the trip to assist the automobile host in arriving at the latter's destination or to perform some service for the latter's benefit * * *; (4) when a substantial or tangible benefit is conferred upon the automobile host in lieu of and for the transportation * * *; (5) when the automobile host and passenger embark on a joint adventure or enterprise in which each is equally or

similarly interested, and which adventure or enterprise is of such moment and character as to indicate that payment is the motivating influence in providing the transportation * * *.''

The Supreme Court in the case of *Miller* v. *Fairley* (1943), 141 Ohio St. 327, affirmed the reasoning as set forth in *Duncan* v. *Hutchinson, supra,* and stated that the precise question to be answered in determining the guest or passenger status of a rider was whether the trip was one of a purely social nature or whether it had a business aspect.

In both *Duncan* v. *Hutchinson* and *Miller* v. *Fairley,* there had been some monetary payment by the rider for the transportation, but in the prior case the court held that the trip being of a purely social nature, the offer of payment was a mere courtesy or social amenity rather than a payment for transportation.

The court, in *Miller* v. *Fairley,* presented a very interesting analysis as to what are the indicia as to whether a trip has a social or business aspect. Such indicia were noted as follows at page 337 in the opinion:

''* * * (a) Nature of the relationship between the motorist and the party transported. Are they social friends, strangers, or business associates? (b) Nature or object of the trip. Is the trip made for pleasure or social recreation, or is it made for business reasons? (c) Nature of the arrangement as to whether it is casual or whether there is a definite and specific contract. (d) Is the arrangement an isolated instance, incidental in nature, or does it have an element of permanency and continuity? (e) Nature of the payment. Is it incidental or is it fixed and certain? (f) Is the payment adequate or inadequate for the service rendered? * * *''

Subsequently, in 1949, the Supreme Court had occasion to again construe the guest statute in the case of *Hasbrook* v. *Wingate,* 152 Ohio St. 50, which case defined a ''guest'' under the statute thusly at paragraph three of the syllabus:

''Where, in the carrying of a rider, a motor vehicle's

direct operation tends to promote the mutual interests of both the rider and driver, thus creating a joint business relationship between them, or where the rider accompanies the driver at the instance of the latter for the purpose of having the rider render a benefit or service to the driver on a trip which is primarily for the attainment of some objective of the driver, the rider is a 'passenger' and not a 'guest'; but if the carriage confers a benefit only on the rider and no benefit other than such as is incidental to hospitality, good will or the like is conferred on the driver, the rider is a 'guest'.''

The court established some additional criteria for the existence of a passenger status that had not previously been enunciated by the court.

Speaking through Judge Hart, the court stated, at page 55:

'' * * * The benefit which must be present to remove the rider from the category of 'guest' imports some contractual relation between the parties to which such benefit is referable. * * * Under such rule the test whether a 'passenger' status existed at the time of an accident, resulting in injury to the passenger, is whether the motorist host could recover in an action at law for the reasonable or agreed value of the transportation furnished. * * *''

One of the underlying principles, as found in *Hasbrook,* is to the effect that there must be some mutual intention on the part of both rider in, and the driver of, the motor vehicle to create the status of "passenger" before it can come into being.

Again, in *Birmelin* v. *Gist* (1954), 162 Ohio St. 98, the Supreme Court appeared to be stressing the contractual relationship between the parties as a necessary requirement in the establishment of a "passenger" status. The first paragraph of the syllabus of *Birmelin* is as follows:

"Under the guest statute, Section 6308-6, General Code (Section 4515.02, Revised Code), one who is riding in a motor vehicle with the owner-operator or person responsible for the operation thereof is a guest and not a paying passenger, unless there is shown a contractual ar-

rangement, express or implied, for the payment of compensation to the owner or driver for the transportation furnished or he is rendering a benefit to the driver primarily for the attainment of some objective of the latter."

In the case of *Burrow* v. *Porterfield* (1960), 171 Ohio St. 28, the court found that a passenger status was established in a fact situation where the rider, a youth leader in a church, had accompanied the pastor of the church to a church conference.

The court, in its decision, pointed out that the "right of recovery" test as set forth at paragraph four of the syllabus in *Hasbrook, supra,* was never intended to be applied as a rider-status test except in cases dealing with express or implied contracts for transportation.

In *Burrow,* the court, speaking through Judge Matthias, reviewed the Ohio cases previously decided, and concluded that a rider is a passenger, and not a guest within the purview of R. C. 4515.02, where one of the enumerated relationships between driver and rider exists. These are set forth within the body of the majority opinion herein.

The court, in *Burrow,* concluded that the driver in that case had waived the protection of the guest statute by accepting a material or business benefit from his rider. The theory upon which such conclusion was based is contained in the following language of the court, to be found at page 37 in the opinion:

"* * * A pastor is obviously vitally interested in improving his church and the adequacy of its functions; indeed, it is his *business* to strive for such improvements. If the attendance of church leaders and workers at an educational conference, such as the one involved herein, would benefit a church, reasonable minds could find that a pastor, as head of a church and the single person most responsible for the success of church activities, would also materially benefit from the attendance of such persons."

In the case of *Hogan* v. *Finch* (1966), 8 Ohio St. 2d 31, the court held that it was proper for the jury to have found the rider to be a passenger where such rider, by request of the driver, prior to the conveyance had performed certain

baby-sitting functions at a swimming pool for the driver in return for a ride home.

One of the most recent cases determining the applicability of the guest statute was *Stiltner* v. *Bahner* (1967), 10 Ohio St. 2d 216, in which the court held that the benefit of the rider's company and companionshp, even where requested by the driver, is not such a material consideration as may constitute payment, so as to remove the rider from the status of a guest.

The court again reviewed its prior decisions in the field and set forth a very complete and detailed statement of criteria for the determination of whether a rider is a "guest * * * while * * * being transported without payment" within the meaning of R. C. 4515.02.

The court, at page 219, set forth such criteria as follows:

"Payment, within the meaning of Section 4515.02, Revised Code, must be payment or benefit accepted or agreed upon by the driver as consideration for the transportation. However, such payment or benefit need not be money. It is sufficient that the guest, by his presence in the automobile, renders service or assistance intended to benefit primarily the driver, or intends to rendered service or assistance at the destination which will primarily benefit the driver, or has before the trip rendered such service or assistance, if the benefit or service is material, as distinguished from a mere social benefit, or nominal or incidental contribution to expenses."

Applying the facts of the instant case to the applicable law, and particularly to the specific language of the criteria as set forth by the court in *Stiltner* v. *Bahner*, I must conclude that the plaintiff John Hyer was a "guest" as a matter of law, within the purview of R. C. 4561.151.

It is not contended that there was any contract, express or implied, for the provision of transportation by the defendants to the plaintiffs. In fact, the testimony shows that Hyer had not been acquainted with Velinoff prior to the morning of the flight, so there was no prior arrangement between the parties. Nor is there any evidence of any

continuing arrangement for transportation of Hyer by Velinoff.

Neither is it contended or argued that there was any actual monetary consideration offered or paid. Therefore, the adequacy or sufficiency of consideration is not in issue.

As previously stated, the nonmonetary benefit of the rider's company or companionship will not constitute "payment," and this we hold to be so whether the society and company is between personal friends or business acquaintances, in the absence of a showing of a joint enterprise.

The defendant Velinoff only generally knew Hyer, but had not previously had any dealings with him. The facts show that Hyer did not work directly with the subcontractors, but dealt with them only through the general contractor.

It might be argued that Hyer was accompanying Sherwood, the construction manager of Multicon, to Cleveland to view the construction progress and, therefore, would be equally in position to be in contact with the subcontractors and with the status of their work and, therefore, would theoretically be in position to render a benefit or perform a service for this particular subcontractor.

This philosophy did, in fact, give the author of this dissent a great deal of difficulty, but there was no evidence adduced by the plaintiff to show that he had, in any way, bestowed a favor or performed a service for the defendant Velinoff.

The evidence fails to disclose that there was any discussion, during the flight, of the project in which the defendant was engaged for Multicon Construction Corporation. Nor was there any evidence relating to any special consideration by way of promises of assistance in acceptance of the defendant's work, or assistance in obtaining the construction draw, or for any other favors hopefully to be granted in return for the transportation being rendered.

Alluding specifically to the criteria as set forth in Stiltner v. Bahner, can it be said that reasonable minds could have concluded that there was any payment, benefits, or promises accepted or agreed upon by the parties as con-

sideration for the trip to Cleveland within the meaning of *Hasbrook* v. *Wingate, supra*? I think not.

Has Hyer, by his presence in the airplane, rendered a service or assistance intended to benefit primarily the pilot Velinoff, or the Mar-Vel Corporation, within the meaning of *Dorn, Admr.,* v. *North Olmsted, supra*? I think not.

Did the rider, Hyer, intend to render a service or assistance at the destination which would primarily benefit the pilot, or the defendant corporation, within the meaning of *Burrow* v. *Porterfield, supra*? I do not believe the evidence would support such a finding.

Had the plaintiff Hyer, before the trip, rendered such service or assistance to Velinoff within the framework of *Hogan* v. *Finch, supra*? I think the evidence demands a negative response.

As noted by the court in *Burrow* v. *Porterfield*, at page 35, "the status of a rider in a motor vehicle may properly be ascertained only by careful analysis of the relationship which exists between rider and driver and a similar study of any benefits to the parties accruing as a result of such relationship." I hold that the same philosophy may pertain to rider and pilot.

After a close analysis of the relationship of the parties in the case before us, I have concluded that there is an absence of a showing by the plaintiffs that there were any benefits agreed upon, or accepted, by the defendant Velinoff as pilot of the plane, which benefits specifically flowed from the offer and acceptance of conveyance to Cleveland, Ohio.

It is to be conceded that there was a business relationship of sorts between the defendant Velinoff, as a subcontractor for Multicon Construction Corporation, and the plaintiff Hyer, an architect employed by Multicon, the limited partnership.

However, in order to avoid the operation of the guest statute, there must be more than a showing of a related business interest, or some business association between the parties.

There must either be a showing of a joint enterprise,

where both parties had an equal and common business purpose in the trip, or the other elements of benefits or services performed or to be performed as consideration for the conveyance must be present.

Such are not the facts in this matter. Reasonable minds could have come to only one conclusion within the framework of the applicable law as pronounced by the Ohio Supreme Court, and that is that the plaintiff Hyer was a "guest" within the purview of R. C. 4561.151. Accordingly, I must disagree with the majority and reject assignment of error number one.

Relating to assignments of error numbers two and three, the exclusion of evidence as to the relationship of Multicon, the limited partnership, and Multicon Construction Corporation, I believe that the exclusionary ruling of the trial court was not prejudicial error.

Even though such evidence had been admitted in order to establish the relationship of the business entities known as Multicon, and to establish the dollar business volume of Mar-Vel with the Multicon Contruction Corporation, this evidence would not have provided the further needed elements to establish the plaintiff Hyer's status as a passenger rather than a guest under R. C. 4561.151.

The judgment of the trial court should, accordingly, be affirmed.